UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK B. GALLAGHER, *on behalf of himself and all others similarly situated*   ) | Civil Action No. |
| ) | **09 CIV. 7669** |
| Plaintiff,   ) | |
| ) | |
| -against-   ) | **CLASS ACTION** |
| ) | |
| CAVALRY PORTFOLIO SERVICES, LLC   ) and CAVALRY INVESTMENTS, LLC   ) | **JURY DEMANDED** |
| ) | |
| ) | |
| Defendants.   ) | **JUDGE KARAS** |

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE
FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. §1692 *et. seq.* AND THE
<u>FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 *et seq.*</u>**

<u>PRELIMINARY STATEMENT</u>

1.      Plaintiff, Frank Gallagher ("Gallagher"), files this Class Action Complaint ("Complaint") seeking redress for the unlawful, predatory practices of the Defendants, Cavalry Portfolio Services, LLC ("CPS") and Cavalry Investments LLC ("CI") (collectively, "Cavalry") all in connection with Cavalry's collection of debts owed by consumers in flagrant violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

2.      Cavalry's insidious tactics include addressing the consumer as Cavalry's "customer," to whom "help" is being offered.  Unsuspecting consumers who receive communications from Calvary are fraudulently led to believe that they are being offered a

valuable service aimed at assisting the Consumer in emerging from difficult financial circumstances.

## JURISDICTION

3.  This court has federal question jurisdiction pursuant to 15 U.S.C. §692k(d), 15 U.S.C.A. §1681p and 28 U.S.C. §1331, since the claims alleged against the Defendants arose under the FDCPA and the FCRA.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that the Defendants are residents of the Southern District of New York and a substantial portion of the acts giving rise to this action occurred in this District.

## PARTIES

5.  Gallagher is an individual residing in Fairfield, New Jersey.

6.  Gallagher is a "consumer" within the meaning of Section 603(c) of the FCRA, 15 U.S.C. § 1681a(c).

7.  Gallagher is a "consumer" within the meaning of Section 803 of the FDCPA, 15 U.S.C. § 1692a(3), in that the alleged debts that Cavalry sought to collect from him are consumer debts, as defined by 15 U.S.C. § 1692a(5), which were originally incurred for personal, family or household purposes.

8.  CI is a Delaware Limited Liability Company registered to do business in the State of New York and maintaining an office for the transaction of its business at 7 Skyline Drive, Hawthorne, New York 10532. Upon information and belief, CI is engaged in the business of purchasing consumer receivables portfolios.

9.  CPS is a Delaware Limited Liability Company registered to do business in the State of New York and maintaining an office for the transaction of its business at 7

Skyline Drive, Hawthorne, New York 10532.  Upon information and belief, CPS is an Affiliate of CI, is wholly owned and operated by CI and is engaged in the business of collecting consumer accounts acquired by CI.

## FACTS APPLICABLE TO ALL COUNTS

### A. CI "Acquires" Plaintiff's Navy FCU Account

10.     In or around November 1986, Plaintiff was granted credit by the Navy Federal Credit Union (the "Navy FCU") and opened a revolving credit account with the Navy FCU (the "Account").

11.     Gallagher's Account was closed in or around August 1990, at which time the sum of $1,356.00 was owed.

12.     Between August 1990 and June 2008, no action was taken by the Navy FCU with respect to the Account and no payments were made by Gallagher on the Account.

13.     Upon information and belief, in or around June 2008, CI acquired a portfolio of consumer accounts from the Navy FCU (the "Navy FCU Portfolio").

14.     Gallagher's Account, upon information and belief, was part of the Navy FCU Portfolio acquired by CI.

15.     Upon information and belief, numerous consumer accounts acquired by CI as part of the Navy FCU Portfolio were, at the time of acquisition, delinquent for a period exceeding 7 years, 180 days.

### B. Cavalry Initiates Derogatory Credit Report Postings

16.     On or about June 3, 2008, CI caused a credit inquiry to be made of one or more consumer credit reporting agencies concerning Gallagher.

17.     In or about June 2008, Cavalry reported to one or more credit reporting agencies that Gallagher's Account was continuing to be paid, with payments made through June 2008.

18.     On or about August 12, 2008, CPS caused an additional credit inquiry to be made of one or more consumer credit reporting agencies concerning Gallagher.

### C.  CPS' Abusive Telephone Campaign

19.     On August 14, 2008, CPS began communicating with Gallagher in an effort to collect the alleged debt with respect to his Account.  To that end, CPS telephoned Gallagher at least fifteen (15) times between August 14, 2008 and September 13, 2008.

20.     On September 14, 2008, in response to the repeated phone calls which Plaintiff received from CPS, Gallagher transmitted to CPS a letter (the "Dispute Letter") by which he (a) disputed the alleged debt, (b) requested validation of the alleged debt, (c) demanded that CPS cease communicating with Gallagher and (d) advised CPS that Plaintiff was represented by counsel.

21.     Between September 15, 2008 and September 24, 2008 an additional eight (8) calls were placed to Gallagher by CPS.

22.     CPS received the Dispute Letter on September 25, 2008 at 11:18 a.m.  Later that same day, at 6:30 p.m., and again two days later, on September 27, 2008, CPS placed additional phone calls to Gallagher.

### D.  Cavalry's Deceptive Written Collection Campaign

23.     CPS' first written communication to Gallagher was dated September 9, 2008 (the "Demand Letter"), twenty-six (26) days following CPS' initial communication to

Gallagher.  A copy of the Demand Letter is annexed hereto and made a part of this

Complaint as Exhibit A.

24.     Gallagher received the Demand Letter on September 19, 2008.

25.     The Demand Letter identifies "Navy FCU" as the "Original Institution" but

omitts any mention of CI as the current owner of the alleged debt or as the creditor to

whom the debt was owed.

26.     The Demand Letter sets forth the "Outstanding Balance" as "$2,692.45."

27.     The Demand Letter contains the following text and layout:



28.     Upon information and belief, the Demand Letter is an example of a form letter, substantially identical to thousands of letters sent to consumers across the nation (the "Letters") by the Defendants.

29.     The Demand Letter does not provide any "validation notice" as required by the FDCPA.

30.     The suggestion conveyed by Cavalry in its Demand Letter, that Cavalry's objective is to help its "customer," *i.e.* the consumer, "get through these difficult times" by offering a "20% Discount" and the act of providing a "20% Discount" coupon to the consumer or "customer" are calculated to mislead and deceive the consumer and are likely to be perceived by the least sophisticated consumer as *bona fide* gestures of compassion and financial assistance.

31.     The absence of the mandatory "validation notice" compounds the misleading character of the Demand Letter.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this case as a class action pursuant to F.R.C.P. Rules 23(a), (b)(2) and (b)(3) on behalf of himself and all others similarly situated. The proposed classes (the "Classes") are defined as:

**Class A:** All consumers to whom a collection letter in the form of the Demand Letter was sent by Defendants within one year prior to the filing of this action and which was not returned as undeliverable.

**Class B:** All consumers whose Navy FCU Accounts remained unpaid for a period exceeding 7 years, 180 days, which were transferred to CI as part of the Navy FCU Portfolio and with respect to which the Defendants furnished information to on one or more consumer credit bureau agencies.

33.     The Classes consist of thousands of consumers.

34.     Since the Letters are mass-mailed form letters, the members of Class A are so numerous that joinder of all members is impractical.

35.     Since, upon information and belief, CI acquired from the Credit Union in June 2008 a portfolio consisting of thousands of charged-off accounts, the members of Class B are so numerous that joinder of all members is impractical

36.     The exact numbers and identities of class members are unknown at this time and can only be ascertained through discovery.  Notwithstanding the foregoing, Plaintiff believes that there are thousands of Consumers who are members of the Classes.

37.     Identification of the Class members are matters capable of ministerial determination from the records of Defendants.

38.     There are common questions of law and fact raised in this Complaint which predominate over any questions affecting only individual Class members.  The questions of law and fact common to the Class concern whether the Defendants engaged in a course of conduct which violates Sections 807, 808, 809 and 812 of the FDCPA and/or Sections 623 of the FCRA.  More specifically, the following questions of law and fact common to the Class members are ripe for determination and are raised herein:

  a.     Did the Defendants violate 15 U.S.C. §1692e(2) by engaging in the deceptive practice of falsely representing the character, amount or legal status of any debt?

  b.     Did the Defendants violate 15 U.S.C. §1692e(8) by engaging in the deceptive practice of communicating false credit information?

c.      Did the Defendants violate 15 U.S.C. §1692e(10) by engaging in the

        deceptive practice of using false representations and deceptive conduct to

        collect consumer debts or obtain information concerning a consumer?

d.      Did the Defendants violate 15 U.S.C. §1692f(1) by engaging in the unfair

        practice of collecting amounts which are not expressly authorized by the

        agreement creating the debt or permitted by law?

e.      Did the Defendants violate 15 U.S.C. §1692g(a) by failing to notify the

        consumer of the amount of the debt?

f.      Did the Defendants violate 15 U.S.C. §1692g(a) by failing to notify the

        consumer of the name of the creditor to whom the debt is owed?

g.      Did the Defendants violate 15 U.S.C. §1692g(a) by failing to notify the

        consumer of his or her right to dispute the debt?

h.       Did the Defendants violate 15 U.S.C. §1692g(a) by failing to notify the

        consumer of his or her right to obtain verification of the debt?

i.      Did the Defendants violate 15 U.S.C. §1692j(a) by furnishing deceptive

        forms.

j.      Did the Defendants violate 15 U.S.C. §161-2(a)(1) by engaging in the

        prohibited practice of furnishing information relating to a consumer to

        any consumer reporting agency while knowing or having reasonable

        cause to believe that the information is inaccurate?

k.      Did the Defendants violate 15 U.S.C. §161-2(a)(2) by failing to update or

        correct information provided to consumer reporting agencies?

l.      Did the Defendants violate 15 U.S.C. §161-2(a)(5) by failing, not later

than 90 days after furnishing information, to notify the credit reporting

agency of the date of delinquency on the consumer's account.

m.      Do the Letters violate the FDCPA as seen from the perspective of the

"least sophisticated consumer?"

39.     Plaintiff's claims are typical of the claims of the Class members as required

by F.R.C.P. 23(a)(3).  Plaintiff and all members of the Classes sustained damages arising

from the Defendants' common course of conduct as complained of herein.  The amount of

money at issue is such that proceeding by way of a class action is the only economical and

sensible manner in which to vindicate the injuries sustained by Plaintiff and the other

members of the Classes.

40.     Plaintiff will fairly and adequately represent the Class members' interests,

all of whom are victims of the Defendants' unlawful and wrongful conduct.  All of the

Class members' claims arise from the very course of conduct and specific activities

complained of herein and require application of the same legal principles.

41.     Plaintiff has retained counsel experienced in bringing class actions and debt

collection abuse claims.

42.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy under F.R.C.P. Rule 23(b)(3).  Congress specifically

provided, at 15 U.S.C. 1692k, for the commencement of class actions as a principal means

of enforcing the FDCPA.

43.     Absent a class action, most members of the Classes would find the cost of

litigating their claims to be prohibitive and, therefore, would have no effective remedy at

law. The members of the Classes are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

44.    The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

## CLAIMS FOR RELIEF ON BEHALF OF CLASS A

### COUNT I
### Violations of FDCPA Section 807(2),
### 15 U.S.C. § 1692e(2)
### (Falsely Representing the Character,
### Amount or Legal Status of any Debt)

45.    Plaintiff repeats and realleges paragraphs 1 through 41, and incorporates them herein by reference.

46.    FDCPA Section 807(5), 15 U.S.C. §1692e(2) provides, in relevant part:

> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .**
>
> **(2) The false representation of – (A) the character, amount, or legal status of any debt...**

47.    Among other things, through the Demand Letter the Defendants:

(a) Misrepresented the amount outstanding;

(b) Falsely represented that the alleged debt could be legally collected;

(c) Failed to disclose the identity of the creditor; and

(d) Falsely represented that the alleged debt was a current obligation.

48.    Upon information and belief the Defendants, and each of them, routinely cause communications to be transmitted to Consumers in the form of the Demand Letter which, among other things:

(a) Inaccurately set forth the amount of the subject debt;

(b) Omit disclosure that CI is the actual creditor and the owner of the debt;

(c) Communicate misleading information concerning the date upon which the debt was incurred;

(d) Mislead the consumer concerning the enforceability of the debt;

(e) Mislead the consumer concerning Cavalry's relationship to the debt; and

(f) Mislead the consumer concerning Cavalry's relationship to the consumer.

49.    By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein.


### COUNT II
### Violations of FDCPA Section 807(10),
### 15 U.S.C. §1692e(10)
### (Use of Deception to Collect a Debt)

50.    Plaintiff repeats and realleges paragraphs 1 through 49 and incorporates them herein by reference.

51.    FDCPA Section 807(10), 15 U.S.C. 1692e(10), provides in relevant part:

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

Page 11

52.     The acts and practices complained in this Complaint constitute the use of false representations and deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, in violation of 15 U.S.C. §1692e(10).

53.     By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein.


## COUNT III
### Violations of FDCPA Section 808
### 15 U.S.C. 1692f
### (Use of Unfair or Unconscionable Means To Collect a Debt)

54.     Plaintiff repeats and realleges paragraphs 1 through 53, and incorporates them herein by reference.

55.     FDCPA Section 808, 15 U.S.C. § 1692f, provides in relevant part:

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.**

56.     The acts and practices complained of herein constitute the use of unfair and unconscionable means to collect or attempt to collect a debt.

57.     By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein.


## COUNT IV
### Violations of FDCPA Section 808(1)
### 15 U.S.C. 1692f(1)
### (Collecting Amounts not Expressly Authorized)

58.     Plaintiff repeats and realleges paragraphs 1 through 57, and incorporates them herein by reference.

59.     FDCPA Section 808(1), 15 U.S.C. § 1692f(1), provides in relevant part:

> A debt collector may not use unfair or unconscionable means to
> collect or attempt to collect any debt. Without limiting the general
> application of the foregoing, the following conduct is a violation of
> this section:
> (1) The collection of any amount (including any interest, fee,
> charge, or expense incidental to the principal obligation) unless
> such amount is expressly authorized by the agreement creating the
> debt or permitted by law.

60.     The acts and practices complained of herein constitute the unfair and

unconscionable practice of collecting amounts not expressly authorized by the agreement

creating the debt or permitted by law.

61.     By virtue of the foregoing, the Plaintiffs are entitled to recover damages as

prayed for herein.


### COUNT V
### Violations of FDCPA Section 809(a),
### 15 U.S.C. § 1692g(a)
### (Failure to Validate Debts)

62.     Plaintiff repeats and realleges paragraphs 1 through 61, and incorporates

them herein by reference.

63.     FDCPA Section 809(a), 15 U.S.C. § 1692g(a), provides in relevant part:

> § 809. Validation of debts
>     (a) Within five days after the initial communication with a
>         consumer in connection with the collection of any debt, a debt
>         collector shall, unless the following information is contained in
>         the initial communication or the consumer has paid the debt,
>         send the consumer a written notice containing—
>             (1)  the amount of the debt;
>             (2)  the name of the creditor to whom the debt is owed;
>             (3)  a statement that unless the consumer, within thirty
>                  days after receipt of the notice, disputes the validity of
>                  the debt, or any portion thereof, the debt will be
>                  assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

64.     The Defendants violated 15 U.S.C. § 1692g(a) in that the Defendants wholly failed to provide the Notice mandated therein.

65.     By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein.


## COUNT VI
### Violations of FDCPA Section 809(b),
### 15 U.S.C. § 1692g(b)
### (Overshadowing the Consumer's Rights)

66.     Plaintiff repeats and realleges paragraphs 1 through 65, and incorporates them herein by reference.

67.     FDCPA Section 809(b), 15 U.S.C. § 1692g(b), provides in relevant part:

.....Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

68.     Cavalry failed to provide the disclosures required by 15 U.S.C. § 1692g(a).


Page 14

69.     The statements contained in the Demand Letter overshadow and are inconsistent with the Consumer's rights to dispute the debt.

70.     By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein.

## COUNT VII
### Violations of FDCPA Section 812(a),
### 15 U.S.C. § 1692j(a)
### (Furnishing Deceptive Forms)

71.     Plaintiff repeats and realleges paragraphs 1 through 70, and incorporates them herein by reference.

72.     FDCPA Section 812(a), 15 U.S.C. § 1692j(a), provides in relevant part:

> **It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.**

73.     By engaging in the practice of withholding and concealing from consumers that the CI is the "creditor of such consumer," consumers are deceived and led to believe that CPS is engaged in collecting on behalf of the original creditor.

74.     The Defendants have designed, compiled and furnished  forms which violate the provisions of section 1692j(a) of the FDCPA.

75.     By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein.

## CLAIMS FOR RELIEF ON BEHALF OF CLASS B

### COUNT VIII
### Violations of FCRA Section 623(a)(1)(A),
### 15 U.S.C. § 1681s-2(a)(1)(A) and
### FDCPA Section 807(8), 15 U.S.C. §1692e(8)
### (Furnishing Inaccurate Information to Credit Reporting Agencies)

76.    Plaintiff repeats and realleges paragraphs 1 through 75, and incorporates them herein by reference.

77.    FCRA Section 623(a)(1)(A), 15 U.S.C. § 1681s-2(a)(1)(A) sets forth the following prohibition:

> **(A) *Reporting information with actual knowledge of errors.*  A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.**

78.    FDCPA Section 807(8), 15 U.S.C. §1692e(8) provides, in relevant part:

> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .**
>
> **(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.**

79.    Cavalry, beginning in June 2008, furnished false and inaccurate information concerning Gallagher's Account to one or more credit reporting agencies in that Cavalry identified the Account as  "paid as agreed" and reported payments made thereon through June 2008 when in fact the Account was "charged off" by the Navy FCU more than 18 years earlier.

80.    Cavalry knew, should have known or had reasonable cause to believe that the information reported to credit reporting agencies concerning the account was inaccurate and false.

81.    Cavalry furnished inaccurate and false information to credit reporting agencies for the purpose of misleading the credit reporting agencies and any users of Gallagher's credit report by creating the false impression that as of June 2008, the Account was not "delinquent."

82.    Cavalry's objectives in inaccurately informing credit reporting agencies that the Account was not in default when it was transferred to CPS were:

(a) Attempting to establish that CPS is "exempt" from the stringent requirements imposed upon "debt collectors" under the FDCPA;

(b) Commencing a new "Reporting Period" with respect to the Account as that term is defined in Section 605(c)(1) of the FCRA, 15 U.S.C. § 1681c(c)(1); and

(c)  Bringing the Account and its collection within the applicable statute of limitations.

83.    By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein, including punitive damages under 15 U.S.C. § 1681n(a)(2) in such amount as the Court shall allow.

## COUNT IX
### Violations of FDCPA Section 807(2),
### 15 U.S.C. § 1692e(2)
### (Falsely Representing the Character, Amount or Legal Status of a Debt)

84.    Plaintiff repeats and realleges paragraphs 1 through 83, and incorporates them herein by reference.

85.    FDCPA Section 807(5),  15 U.S.C. §1692e(2) provides, in relevant part:

> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .**
>
> **(2) The false representation of – (A) the character, amount, or legal status of any debt...**

86.     Cavalry, beginning in June 2008, furnished information to one or more credit reporting agencies which falsely represented the character, amount and legal status of Gallagher's Account in that Cavalry designated the Account "paid as agreed" and reported payments being made through June 2008 when in fact the Account was "charged off" by the Navy FCU more than 18 years earlier..

87.     Cavalry furnished inaccurate information to credit reporting agencies for the purpose of misleading the credit reporting agencies and any users of Gallagher's credit report by creating the false impression that as of June 2008, the Account was not "delinquent."

88.     By falsely representing the status of the Account to credit reporting agencies Cavalry anticipated attaining the following objectives:

(a) Exempting CPS from the stringent requirements imposed upon "debt collectors" under the FDCPA;

(b) Commencing a new "Reporting Period" with respect to the Account as that term is defined in Section 605(c)(1) of the FCRA, 15 U.S.C. § 1681c(c)(1); and

(c)  Bringing the Account and its collection within the applicable statute of limitations.

89.     By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein, including punitive damages under 15 U.S.C. § 1681n(a)(2) in such amount as the Court shall allow.

## COUNT X
## Violations of FCRA Section 623(a)(2),
## 15 U.S.C. § 1681s-2(a)(2)
## (Failure to Correct and Update Incomplete or Inaccurate Information)

90.     Plaintiff repeats and realleges paragraphs 1 through 89, and incorporates them herein by reference.

91.     FCRA Section 623(a)(2), 15 U.S.C. § 1681s-2(a)(2) imposes the following obligations upon those who furnish information concerning consumers to credit reporting agencies:

> **(2) *Duty to correct and update information.* A person who (A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.**

92.     Cavalry knew that it furnished incomplete and inaccurate information to one or more credit reporting agencies but failed to correct or update that information.

93.     By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein, including punitive damages under 15 U.S.C. § 1681n(a)(2) in such amount as the Court shall allow.

## COUNT XI
### Violations of FCRA Section 623(a)(5),
### 15 U.S.C. § 1681s-2(a)(5)
### (Failure to Provide Notice of Delinquency)

94.     Plaintiff repeats and realleges paragraphs 1 through 93, and incorporates them herein by reference.

95.     FCRA Section 623(a)(5), 15 U.S.C. § 1681s-2(a)(5) imposes the following obligations upon those who furnish information concerning consumers to credit reporting agencies:

> **(5) Duty to Provide Notice of Delinquency of Accounts**
> **(A) *In general.* A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action shall, not later than 90 days after furnishing the information, notify the agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency on the account that immediately preceded the action.**

96.     Cavalry failed to notify any credit reporting agencies of the date of delinquency.

97.     By virtue of the foregoing, the Plaintiffs are entitled to recover damages as prayed for herein, including punitive damages under 15 U.S.C. § 1681n(a)(2) in such amount as the Court shall allow.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor and in favor of the members of the Classes and against the Defendants, each individually, jointly and severally, as follows:

A)  Awarding statutory damages as provided under the FDCPA, pursuant to 15 U.S.C. § 1692k;

B) Awarding statutory damages as provided under the FDCPA, pursuant to 15 U.S.C. § 1692j(b).

C) Awarding statutory damages as provided under the FCRA, pursuant to 15 U.S.C. § 1681n;

D) Awarding statutory damages as provided under the FCRA, pursuant to 15 U.S.C. § 1681o;

E) Enjoining and prohibiting defendants from engaging in any illegal conduct described herein;

F) Awarding reasonable attorney fees, litigation expenses and costs incurred pursuant to 15 U.S.C. §§ 1682n(a)(3), 1682o(a)(2) and 1692(a)(3);

G) Declaring that the Letters violate the FDCPA;

H) Declaring that the Demand Letter violates the FDCPA;

I) Awarding punitive damages in such sum as the Court shall allow pursuant to 15 U.S.C. §§ 1682n(a)(2),; and

J) Granting such other and further relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  Stamford, CT
      September 2, 2009

LEMBERG & ASSOCIATES L.L.C.
*Attorneys for Plaintiff*

By _____

   Sergei Lemberg (SL 6331)
   1100 Summer Street
   Stamford, CT 06905
   Telephone:  (203) 653-2250
   Facsimile:  (203) 653-3424
   slemberg@lemberglaw.com